

**SIGNED this 13th day of September, 2011.**

_____
JOHN C. AKARD
UNITED STATES BANKRUPTCY JUDGE

_____

# United States Bankruptcy Court
### Western District of Texas
### San Antonio Division

| IN RE: | BANKR. CASE NO. |
|---|---|
| ROWLAND J. MARTIN, JR. | 05-80116 |
| *DEBTOR* | CHAPTER 13 |

**MEMORANDUM OF DECISION ON MOTION FOR RECONSIDERATION, POINTS AND AUTHORITIES IN SUPPORT OF RELIEF AND NOTICE OF CLAIM PURSUANT TO 17 C.F.R. 240.21F AND MOTION FOR WRIT OF ERROR CORAM NOBIS AND POINTS AND AUTHORITIES IN SUPPORT OF RELIEF**

Came on for hearing the foregoing matters. On September 8, 2011 the court held a hearing on the Debtor's various motions. The court found helpful the Notice of Proposed Order and Memorandum of Points and Authorities in Support of Debtor's Motion for Reconsideration in Bankruptcy Case No. 05-50116 which is item 72 on the Clerk's docket [hereinafter referred to as "Docket Item 72"]. Various items relative to the Debtor's motions were attached as exhibits to Docket Item 72. The Debtor and an attorney for the Bexar County taxing authorities were the

1

only parties to attend the hearing. The following constitutes this court's findings of fact and conclusions of law.

The Debtor has operated in several capacities and venues:

1. <u>As an individual</u>

<u>Background</u>: On December 5, 2005, the Debtor, Rowland J. Martin, Jr. filed for relief under Chapter 13 of the Bankruptcy Code in Case No 05-80116 [the instant case]. The petition recited that he did business as Apollo Playhouse, Diverse Domain.com, River City Media Building and La Loraine Gallery.

The Schedules filed in this case [Docket Item 11] list two parcels of real property including the property at 1216 West Avenue, San Antonio, Texas which is stated to be the Debtor's homestead with a value of $459,000 and subject to liens of $183,716.93. The list of Creditors Holding Secured Claims states that McKnight & Bravenec hold a lien on this property for $19,750 which is disputed by the Debtor and that Reliant Financial, Inc holds two liens with balances of $149,000 and $6,844.86.

On March 31, 2006, Aegis Mortgage Corporation ("Aegis") filed a Proof of Claim asserting it was secured by real estate. The claim was for $203,121.69 which included arrearages and other charges at the time the case was filed of $9,939.89. No documents evidencing the note and lien were attached to the claim. On May 4, 2006, Aegis filed a motion to be relieved from the automatic stay [Docket Item 47]. Attached to the motion were a note and deed of trust on 1216 West Avenue[1] dated October 23, 2003. The note and deed of trust were executed by Moroco Ventures, LLC by Rowland J. Martin, Jr. A hearing on Aegis' motion was held on May 30, 2006. The case docket sheet recites that the motion was "unopposed." An order granting Aegis' motion was signed on May 31, 2006 [Docket Item 52].

At the September 8, 2011 hearing, the Debtor referred to his "co-debtor" in the Chapter 13 case. When asked about the co-debtor by the court, the Debtor stated that Moroco Ventures, LLC [the "LLC"] was the co-debtor. The court pointed out that only individuals can be debtors in Chapter 13, to which the Debtor replied that the charter for the LLC had been revoked and since he owned all of the stock in the LLC, he considered it part of his Chapter 13 case. He stated that after the charter for the LLC was reinstated, he filed a Chapter 11 for the LLC.[2]

---

[1] The legal description is Lots 1, 2, and 3, Block 50, New City Block 8806, Los Angeles Heights Addition to the City of San Antonio, Bexar County, Texas according to plat thereof recorded in Volume 150, Pages 284-286, of the Deed and Plat records of Bexar County Texas, save and except a small portion thereof described by metes and bounds in the deed of trust.

[2] The Chapter 11 for the LLC was filed on May 2, 2006, which was before the Chapter 13 was dismissed.

On May 22, 2006 the Debtor filed a motion to dismiss his Chapter 13 case [Docket Item 51]. An order dismissing the case was signed on June 20, 2006 [Docket Item 55] and the case was closed on December 7, 2006.

On July 15, 2011 the Debtor filed a motion to reopen his Chapter 13 Case [Docket Item 59], which was granted on July 28, 2011 [Docket Item 61].

On June 21, 2011 the Debtor filed his Motion for Reconsideration, Points and Authorities in Support of Relief and Notice of Claim Pursuant to 17 CFR 240.21F [Docket Item 58]. On July 15, 2011 the Debtor filed a Motion for Writ of Error Coram Nobis and Points and Authorities in Support of Relief [Docket Item 60]. The September 8, 2011 hearing was with respect to those motions.

Discussion: The Debtor's argument with respect to his Chapter 13 case is that Aegis was not the owner and holder of the note and liens on 1216 West Avenue at the time it filed a claim in his Chapter 13 case and secured an order relieving the automatic stay to allow it to foreclose on the property. He asserts that he discovered that Aegis was not the owner some time after the property was foreclosed upon. He asserts that the actions of Aegis were a fraud on him.

1. While the filings of Ageis contained many deficiencies, the time to have objected to those deficiencies would have been when the claim was filed or when the motion for relief from stay was filed. The Debtor did not do so. Indeed, he did not contest Aegis' motion to lift the stay.
2. Other than his statements and charts, the Debtor did not offer any proof that Aegis was not the owner of the note and lien at the time it filed its claim in his Chapter 13 case.
3. Even if Aegis was not the owner of the note and lien, it could have brought such actions as the agent of the owner. In Docket Item 75, the Debtor states that "Reliant assigned a subservicing interest in the first deed of trust to Aegis Mortgage Corporation…" [page 2, line 8].
4. Assuming that Aegis was not the owner of the note and lien at the time in question, the Debtor has not demonstrated that he was injured in any way by Aegis' actions. The Proof of Claim asserts that he was very delinquent in the payments on the note and there is no evidence that he made any payments during his Chapter 13 case; thus it appears that the holder of the note should be allowed to foreclose.
5. At hearing, the Debtor stated that he had a commitment in the Chapter 11 proceedings of his LLC (see below) to refinance the properties but was unable to do so because of the foreclosure. He offered no proof of that commitment. But

3

even if he had such a commitment, the holder of the note was free to foreclose after the stay was relieved in the Chapter 13 case.

Conclusion: The Debtor has not shown that he was injured in any way by Aegis' actions in the Chapter 13 case, and thus all of his complaints with respect to that matter must be denied.

2. Moroco Ventures, LLC

Background: On May 2, 2006, Moroco Ventures LLC [the "LLC"] filed for relief under Chapter 11 of the Bankruptcy Code in Case No. 06-50829 in this court. Rowland J. Martin, Jr. signed the petition as "Managing Member" of the LLC [Docket Item 1]. The schedules filed May 16, 2006 [Docket Item 8] list one parcel of real property – the property at 1216 West Avenue valued at $459,900 and subject to liens for $221,053.87. The list of Creditors Holding Secured Claims lists Aegis Mortgage Corporation holding a deed of trust on 1216 West Avenue with a balance due of $193,181.80 and McKnight & Bravenec holding a lien on the property for $19,750. Both liens are listed as disputed. There is also a lien for 2004 and 2005 taxes for $8,122.07.

On June 21, 2006, Aegis filed a motion to be relieved from the automatic stay with respect to 1215 West Avenue [Docket Item 34]. The exhibits to the motion were the same ones attached to Aegis' motion in the Chapter 13 case. On August 1, 2006 the LLC and Aegis entered into an agreed order that conditioned the continuance of the stay upon the LLC making various payments, keeping the property insured, and other provisions [Docket Item 48]. The failure of the LLC to comply with the terms of the order would cause the automatic stay to be relieved without further order of the court. On August 16, 2006 the attorney for Aegis filed a Notice of Termination of Automatic Stay because the LLC failed to make the first payment due under the agreed order [Docket Item 50]. There is nothing further on the docket sheet relating to Aegis.

On January 8, 2007, the Chapter 11 case was dismissed [Docket Item 62] and the case was closed March 22, 2007.

Discussion: With respect to Aegis, the comments are the same as in the Chapter 13 case. The docket sheets indicate that neither the Debtor nor the LLC could make the payments due on 1216 West Avenue.

The docket sheets in both the Chapter 13 and Chapter 11 cases indicate considerable disputes with Albert W. McKnight and Edward L. Bravenec. The Debtor indicated that they are attorneys who represented him (or him and the LLC) in prior matters and secured a lien on 1216 West Avenue for their fees. He asserts that Aegis allowed them to foreclose on 1216 West Avenue before Aegis foreclosed. Although the Debtor may be upset with the attorneys, neither he nor the LLC were injured by the order in which the foreclosures were held. The Debtor

4

asserts that the liens were transferred among various parties. Again, he has not demonstrated that he or the LLC were injured by these transfers. The holders of the liens were free to transfer them as they wished and, once the automatic stay was relieved (or the cases dismissed), to foreclose because the notes were not being paid.

Conclusion: The Debtor has not demonstrated any fraud or malfeasance in either bankruptcy case nor in the foreclosures on the property.

3. Administrator of the Estate of Johnnie Mae King, Deceased

Background: The Debtor was appointed as Administrator of the Estate of Johnnie Mae King, Deceased, by the Probate Court of Bexar County, Texas in Cause No. 2001PC1263 on June 1, 2001. At the September 8, 2011 hearing in this matter, the Debtor presented Letters of Administration which stated that the appointment is in full force and effect as of September 6, 2011. The Debtor stated that he was one of the beneficiaries of that estate.

At the hearing the Bexar County Tax Assessor/Collector introduced six exhibits:

- 224 Henry Street: With respect to this property Exhibit 4 is a certified copy of a December 31, 2009 Judgment of the 224th Judicial District Court of Bexar County, Texas for delinquent taxes for 2001 – 2008. Exhibit 1 is a statement showing that taxes are due on this property for 2009 and 2010.
- 3437 Mickeljohn Street: With respect to this property Exhibit 5 is a certified copy of an August 31, 2009 Judgment of the 288th Judicial District Court of Bexar County, Texas for delinquent taxes for 2007 and 2008. Exhibit 2 is a statement showing that taxes are due on this property for 2009 and 2010.
- 951 Lobrano: With respect to this property Exhibit 6 is a certified copy of a November 4, 2009 Judgment of the 150th Judicial District Court of Bexar County, Texas for delinquent taxes for 2001 – 2008. Exhibit 3 is a statement showing that taxes are due on this property for 2009 and 2010.

The Debtor seeks to have this court set aside the above judgments because he feels they should have been brought in the Probate Court rather than in the District Courts. He acknowledges that they were default judgments. He did not make his concerns known to the District Courts nor did he appeal the judgments.

The Debtor also asserts that the taxes on these properties are too high because the buildings on the properties were condemned and removed. It is not clear whether this complaint relates to all three properties. He did not contest the tax valuations at the time of the assessment of the taxes nor appeal from the assessments. The Debtor seeks to have this court re-determine the assessments.

5

Discussion: If there is any merit to the Debtor's assertions, the time for him to raise those issues was when the matters were being handled by the District Courts and in the tax appraisal process. The Debtor having failed to do so, the judgments and assessments are now final.

Although the judgments list the Debtor as the Defendant, the matters which the Debtor raises relate to a probate estate; they do not relate to his personal Chapter 13 case. This court has no jurisdiction over them.

Conclusion: This court has no jurisdiction over the tax matters, so the Debtor's complaints in that regard are in all things denied.

4. Adversary Proceeding

Background: On September 6, 2011 the Debtor filed in this court Adversary Proceeding 11-5141 in which he sought to remove to the Bankruptcy Court two of the three state court suits described above and a "Bill of Review" which he filed as Case No. 2010CI-19099 in the District Courts of Bexar County, Texas. The basis of the Adversary Proceeding was the Debtor's assertion that tax matters should have been handled in the probate court because the property involved was owned by the Estate of Johnnie Mae King.

Discussion and Conclusion: Because this court does not have jurisdiction over probate matters, the court denied all relief requested by the Debtor and closed the Adversary Proceeding by order dated September 12, 2011.

5. Other Suits

Background: On October 4, 2010 The Debtor filed Case No. 4:10-cv-03644 in the United States District Court for the Southern District of Texas against Charles Grehn, Reliant Financial, Inc., Edward Bravenec, The Law Office of McKnight and Bravenec and 1216 West Ave., Inc. Apparently this is a continuation of the Debtor's complaints with respect to the property at 1216 West Ave. in San Antonio, Texas. By order dated May 18, 2011 the case was transferred to the Western District of Texas and given Case No. 5:11-cv-00414 where it is now pending before Judge Harry Lee Hudspeth. It is not clear, but apparently the Debtor is seeking to have this Bankruptcy Court assume jurisdiction over this suit in the Federal District Court.

At hearing, the Debtor discussed another suit in the United States District Court for the Western District of Texas. He indicated that he was a party to the suit but did not name the other parties nor give the case number of the suit. He stated that the judgment in that suit was based on false information. He also stated that Judge Fred Biery had ordered him not to file anything further in the District Court but to pursue his appeal to the United States Court of Appeals for the

Fifth Circuit. The Debtor acknowledged that he did not appeal to the Fifth Circuit. The Debtor seeks to have this Bankruptcy Court review the judgment of the United States District Court.

Discussion and Conclusion: The Bankruptcy Court is a subordinate unit of the United States District Court. The Bankruptcy Court has no power, authority or jurisdiction to review actions of a United States District Court. The Debtor's requests in these matters must be denied.

6. Present Motions

Background: The motions that the Debtor filed in his reopened Chapter 13 case, and that are the subject of this decision, include the following: 1) The Debtor's Motion for Reconsideration, Points and Authorities in Support of Relief and Notice of Claim Pursuant to 17 C.F.R. 240.21F (Motion for Reconsideration); and 2) the Debtor's Motion for Writ of Error Coram Nobis and Points and Authorities in Support of Relief ("Motion for Writ of Error"). The Debtor's Motion for Reconsideration requests that the court reconsider, pursuant to Rule 60(b)(1) and (b)(3) of the Federal Rules of Civil Procedure, this court's June 20, 2006 order granting the Debtor's Motion to Dismiss his Chapter 13 case. The Debtor seeks reconsideration of this dismissal order so that this court can "entertain a consolidated action for declaratory and injunctive relief from injuries caused by fraudulent transfers and obligations in [the Debtor's] bankruptcy case in violation of section 548 and 549 of Title 11." Although the Debtor's pleadings are not entirely clear, it appears that he has a suit pending in the district court for the Western District of Texas against a mortgage company (Aegis Mortgage Corporation) and the law firm of McKnight & Bravenec, the firm retained by the Debtor during his Chapter 13 case to serve as counsel for the Debtor in his capacity as the administrator of the Estate of King. The Debtor now seeks reconsideration of this court's dismissal order so that he might pursue claims in this court against Aegis for its allegedly fraudulent conduct in connection with proofs of claim filed by Aegis in the Debtor's Chapter 13 case. The Debtor also seeks to pursue claims against McKnight & Bravenec for malpractice and breach of fiduciary duty for the firm's alleged collusion with Aegis in perpetrating a ponzi scheme against the Debtor.

The Debtor has also filed a Motion for Writ of Error wherein the Debtor seeks an order from this court correcting various alleged factual errors made by the state district court in rendering two decisions involving the Debtor: *Estate of King v. City of San Antonio*, Case No. SA-08-CA-484-FB and *County of Bexar et al. v. Opal Gilliam*, Case No. SA-09-CA-949.

Discussion: Initially, it bears noting that the Debtor's motion to reopen his dismissed Chapter 13 case was erroneously granted. As explained by the Bankruptcy Appellate Panel for the First Circuit:

> The Debtor misunderstands the availability of § 350(b) reopening. Only cases closed after full administration may be reopened under § 350(b). *See In re King*, 214 B.R. 334,

7

336 (Bankr. W.D. Tenn. 1997). A case which is dismissed (say, on a trustee's motion on account of nonpayment) is not one that has been fully administered. Although a dismissed case may be reported to the judiciary's Administrative Office as 'closed' for statistical purposes, virtually all courts recognize that a bankruptcy case that has been dismissed is not closed within the meaning of § 350(b), and, therefore, may not be reopened. *See id*. (citing cases). The Debtor's case was dismissed under § 1307(c) on the Chapter 13 trustee's motion. It cannot be reopened under § 350(b). A dismissal can be set aside only by appeal or a motion under either Fed. R. Civ. P. 59(e) (via Fed. R. Bankr. P. 9023 and) or Fed. R. Civ. P. 60(b) (via Fed. R. Bankr. P. 9024).

*Pingaro v. Ameriquest Mortg. Co. (In re Pingaro)*, 2008 Bankr. LEXIS 3959, at *7-9 (B.A.P. 1st Cir. Aug. 14, 2008); *see also Critical Care Support Servs., Inc. v. United States (In re Critical Care Support Servs., Inc.)*, 236 B.R. 137, 140 (E.D.N.Y. 1999) (concluding that because the Debtor's bankruptcy petition was dismissed, as opposed to "closed" within the meaning of 11 U.S.C. § 350(a), section 350(b) was not implicated) (citing cases); *In re Archer*, 264 B.R. 165 (Bankr. E.D. Va. 2001) ("Bankruptcy case law is uniform in holding that Code § 350(b), which allows the court to reopen a closed case, does not apply to a dismissed case."). Accordingly, the Debtor's dismissed Chapter 13 case should not have been reopened. *See Pingaro*, 2008 Bankr. LEXIS 3959, at *7-9, n.3 (noting that "reopening a case usually occurs 'in order to take care of some detail that was overlooked or left unfinished at the time the case was closed. It was not designed as an opportunity to create, and then enforce, rights that did not exist at the time the case was originally closed.'") (citation omitted).

Although the Debtor's motion to reopen should not have been granted, the court may nonetheless address the Debtor's Motion for Reconsideration of this court's June 20, 2006 order dismissing the Debtor's Chapter 13 case. The Debtor has brought this motion pursuant to Rule 60(b)(1) and (b)(3). *See Critical Care Support Servs., Inc.*, 236 B.R. at 141. Rule 60(b) provides:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) Mistake, inadvertence, surprise, or excusable neglect;
>
> ***
>
> (3) Fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party[.]

FED. R. CIV. P. 60(b). Rule 60(c) provides that, "[a] motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." FED. R. CIV. P. 60(c). Here, the order

dismissing the Debtor's case (of which the Debtor now seeks reconsideration) was entered on June 20, 2006. The Debtor filed his present motion to reconsider on June 21, 2011. The Debtor's Motion for Reconsideration is thus clearly untimely, and will not be granted.

Furthermore, the court will not grant Rule 60(b) relief in connection with an order entered at the Debtor's request. *See Pettle v. Bickhan (In re Pettle)*, 410 F.3d 189, 192 (5th Cir. 2005) ("'[T]he broad power granted by [Rule 60(b)](6) is not for the purpose of relieving a party from free, calculated, and deliberate choices he has made.'") (quoting *Edward H. Bohlin Co. v. Banning*, 6 F.3d 350, 356-57 (5th Cir. 1993)). In *Pettle*, the Fifth Circuit refused to grant relief under Rule 60(b)(6) where the Debtor had voluntarily dismissed his own adversary proceeding with prejudice. *Id*. The court stated that "[w]here a party makes a considerable [sic] choice . . . he 'cannot be relieved of such a choice under Rule 60(b) because hindsight seems to indicate to him' that, as it turns out his decision was 'probably wrong.'" *Id.* at 193 (quoting *Paul Revere Variable Annuity Ins. Co. v. Zang*, 248 F.3d 1, 6 (1st Cir. 2001)). Similarly, in *Nemaizer v. Baker*, the Second Circuit refused to grant relief from a stipulated dismissal, stating that "an attorney's failure to evaluate carefully the legal consequences of a chosen course of action provides no basis for relief from a judgment" under Rule 60(b)(1) or 60(b)(6). 793 F.2d 58, 62 (2d Cir. 1986). Accordingly, the court will deny the Debtor's Motion for Reconsideration the court's order dismissing the Debtor's bankruptcy case.

The court must also deny the Debtor's Motion for Writ of Error. This court simply does not have the jurisdiction to correct purported factual errors in orders entered by the state court. As explained by the district court for the Northern District of Texas:

> The Supreme Court, in *United States v. Morgan*, revived the ancient writ of error coram nobis by holding that the writ was available under 28 U.S.C. § 1651. The Court of Appeals for the Fifth Circuit has since explained: The writ of coram nobis is an extraordinary remedy available to a petitioner no longer in custody who seeks to vacate a criminal conviction in circumstances where the petitioner can demonstrate civil disabilities as a consequence of the conviction, and that the challenged error is of sufficient magnitude to justify the extraordinary relief.
>
> A coram nobis petition, however, must be directed to the court that rendered the judgment. 'It is well settled that the writ of error coram nobis is not available in federal court to attack state criminal judgments.' Under this controlling authority, this Court lacks jurisdiction to consider Jesuorobo's petition for writ of error coram nobis challenging a state court conviction.

*Jesuorobo v. Texas*, 2005 U.S. Dist. LEXIS 12530, at *3-4 (N.D. Tex. June 27, 2005) (noting that "although the all writs act, 28 U.S.C. § 1651, provides that a court 'may issue all writs

9

necessary or appropriate in aid of [its] respective jurisdiction,' a federal district court lacks the general power to issue writs of mandamus to command state courts and their officers in the performance of their duties."). Accordingly, the Debtor's Motion for Writ of Error will also be denied.

For the reasons stated in this opinion, the court will enter a separate order denying all relief requested by the Debtor and re-closing this Chapter 13 case.[3]

###

---

[3] For several years, Mr. Martin has been litigating these matters without success. The court sincerely hopes that Mr. Martin will put these matters behind him and secure employment so that he can begin rebuilding his life.

10